## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| DENA NATOUR FOR MINOR | ) | |
| HADI ABUATELAH , | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 22-cv-03998 |
| | ) | |
| v. | ) | Hon. Steven C. Seeger |
| | ) | |
| CHIEF OF POLICE OAK LAWN POLICE | ) | |
| DANIEL VITTORIO, OFFICER B. | ) | |
| COLLINS, OFFICER P. O'DONNELL | ) | |
| OFFICER M. HOLLINGSWORTH and | ) | |
| THE VILLAGE OF OAK LAWN | ) | |
| Defendants. | ) | |
| | ) | |

### MOTION TO STAY AND SUPPORTING MEMORANDUM

Defendant, Officer Patrick P. O'Donnell, by his attorney, Michael J. Victor, and Defendant

Officers Collins and Hollingsworth ("Officer Defendants") by their attorney, K. Austin Zimmer

move this Court to stay the case until a pending criminal investigation is resolved, and in support

thereof, state as follows:

### Introduction and Background

The instant case should be stayed. A stay would honor the rights of Officer O'Donnell,

Officer Collins and Officer Hollingsworth who are defendants in this civil matter, and also, the

subject of a pending criminal investigation. The resolution of that criminal matter will provide

clarity to all parties and to this Court, so that this case can proceed in a fair way that respects the

rights of all the parties involved. Accordingly, the Officer Defendants request that this case be

stayed until the criminal investigation is complete is complete.

This lawsuit arises from a July 27, 2022 encounter between officers from the Village of

Oak Lawn police department and Hadi Abuatelah, a minor. Plaintiff Dena Natour filed the seven-

1

count complaint on his behalf. Count I is a Section 1983 claim for excessive force/failure to intersection against Officer O'Donnell and defendant Officers B. Collins and M. Hollingsworth (collectively, "Defendants Officers"). (Doc. 15, Complaint, p. 4). Count II is a Section 1983 racially motivated conspiracy claim. (Complaint, p. 5). Count III is a *Monell* claim against defendant Village of Oak Lawn. Counta IV-VII are state law claims, respectively for: intentional infliction of emotional distress; battery, *respondeat superior*; and indemnity.

On July 29, 2022, the Illinois State Police ("ISP") announced that its Zone 1 Public Integrity Task Force undertook an investigation of the incident, and upon information and belief, the Cook County State's Attorney will review ISP's investigation and decide if criminal charges should be filed. Thereafter, the matter may be reviewed by the Illinois State Appellate Prosecutor's Office.

Upon information and belief, these reviews are not complete. Because the criminal investigation into the Defendant Officers' conduct is still pending, and because ISP's investigation could lead to criminal charges, for the reasons set forth below, Officer Defendants request that the court stay the case, including the any obligation of Officer Defendants to respond to the complaint or participate in any discovery process.

## Discussion

A court has the inherent power to manage its docket "with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co., 299 U.S.*, 248, 254-55 (1936). Federal Rule of Civil Procedure 26(c) gives the Court discretion to issue an order staying discovery for good cause. Additionally, "the court has the inherent power to stay civil proceedings, postpone civil discovery, or impose protective orders when the interests of justice so dictate." *Doe v. City of Chicago*, 360 F.Supp.2d 880, 881 (N.D. Ill. 2005).

**This Court should stay the case until ISP concludes its
Investigation and until the Cook County State's Attorney and the
 Illinois State Appellate Prosecutor Office Complete their reviews**

A stay in a civil case can be appropriate when a civil litigant is the subject of a pending criminal investigation.  If the instant civil case proceeds, Officer Defendants could be unfairly forced into invoking his Fifth Amendment privilege to protect himself from involuntarily disclosing information, which could unfairly impact the pending criminal investigation. *Cruz v. Cty. of DuPage*, No. 96 C 7170, 1997 WL 370194, at *1 (N.D. Ill. June 27, 1997) ("whether the court should exercise its discretion in order to avoid placing the defendants in the position of having to choose between risking a loss in their civil cases by invoking their Fifth Amendment rights, or risking conviction in their criminal cases by waiving their Fifth Amendment rights and testifying in the civil proceedings.").

However, a stay would foster the orderly administration of justice, because it would honor the Officer Defendants' constitutional rights.   A stay is consistent with this Court's duty to protect the Fifth Amendment and its underlying principles.   The right not to incriminate oneself is enshrined, and guaranteed, by the Fifth Amendment of the United States Constitution, which provides: "No person shall . . . be compelled in a criminal case to be witness against himself." U.S. Const. Amend. V.   This right is well understood to protect all persons — including innocent civil defendants who might otherwise be "ensnared by ambiguous circumstances" —from compulsory testimony and acts of production which, unfairly, might be used to furnish a link in the chain of evidence needed to convict them.  *Ohio v. Reiner*, 532 U.S. 17, 21 (2001).

The Fifth Amendment is "one of the great landmarks in man's struggle to make himself civilized, *Ullmann v. United States*, 350 U.S. 422, 426 (1956), and is one of the "core concepts of our adversary judicial system.  *In re Corrugated Container Antitrust Litig.*, 661 F.2d 1145, 1149 (7th Cir. 1981), *aff'd sub nom.*, *Pillsbury Co. v. Conboy*, 459 U.S. 248 (1983).

3

Based on their own experiences, the Founders understood that it was vital to express a protection against government abuse as "our fundamental law." *Ullmann*, 350 U.S. at 426. "Having had much experience with a tendency in human nature to abuse power, the Founders sought to close the doors against like future abuses by law-enforcing agencies." *Id.* at 427. The Fifth Amendment "privilege is a shield against the dangers of an inquisitorial system of jurisprudence." *Corrugated Container*, 661 F.2d at 1149,

As one of the "most fundamental rights under the Constitution" the American judicial system has fiercely protected the right from damaging erosion. *Cordeck Sales, Inc. v. Constr. Sys., Inc.*, 382 Ill. App. 3d 334, 345 (1st Dist. 2008). The United States Supreme Court has been "zealous to safeguard the values which underlie the privilege." *Kastigar v. United States*, 406 U.S. 441, 445-45 (1971). Accordingly, United States Supreme Court, and Illinois courts, have "always ***broadly construed*** [the Fifth Amendment's] protection to assure that an individual is not compelled to produce evidence which later may be used against him as an accused in a criminal action." *Corrugated Container*, 661 F.2d at 1150 (quoting *Maness v. Meyers*, 419 U.S. 449 (1975)) (emphasis and alteration added).

It is the courts' sacrosanct responsibility to zealously "safeguard the values which underlie the privilege." *Kastigar*, 406 U.S. at 445-45 (1971). The court must approach the right in "the spirit of strict, not lax, observance." *Ullmann*, 350 U.S. at 429.

Here, the Court would appropriately champion the principles underlying the Fifth Amendment by staying the case and preventing Officer Defendants from being prejudicially compelled to make decisions which would compromise their rights and their civil defense.

A stay is also supported by the case law. Where a civil case involves alleged police officer misconduct, courts have stayed cases pending the resolution of related investigations of the involved police officers. *E.g. Chagolla v. City of Chicago*, 529 F. Supp. 2d 945, 948 (N.D. Ill.

2008). Where there is an investigation into a police officers' on-the-job conduct which could lead to criminal prosecution, there is no question that the officers could legitimately claim their Fifth Amendment privilege against self-incrimination if required to answer the complaint or discovery requests. *Id.* at 944–45. Absent a stay of proceedings in a case, each of the officers "would have to decide whether to claim the privilege against self-incrimination or to answer the complaint and, ultimately, respond to written discovery requests and questioning at a deposition." *Id.* at 945. "Any individual defendant who is forced to respond to discovery will be faced with the choice of whether to claim or waive the privilege against self-incrimination." *Id.* at 947.

Both choices carry unfair risks and consequences to Defendant Officers. "Any defendant who chooses to invoke the privilege runs the risk that this will be used as the basis for an adverse inference against him or her in this case." *Id.* at 945. A plaintiff can then try to use the invocation of the privilege to prove the officer's liability. *Id.* at 947. "Conversely, any defendant who chooses to testify or otherwise respond to discovery in this case runs the risk that his or her responses will be used by prosecuting authorities to pursue the current criminal charges or other potential charges not yet filed." *Id.* at 945. Therefore, the affected officers are "effectively backed into a corner" with "no viable choice." *Id.* at 947. Courts temper the unfairness that would result from having to make the choice by staying the case as to the officers pending further and subsequent developments which might warrant terminating or modifying the stay. *Id.* at 948.

A stay is also supported by the factors courts consider in deciding whether a stay is appropriate. *See e.g., Chagolla v. City of Chicago*, 529 F.Supp.2d, 945, 948 (N.D. Ill. 2008). Determination of whether to grant a stay due to a parallel criminal investigation or prosecution involves balancing the interests of the plaintiff, the defendants, and the public. The factors considered include the following nonexclusive list: a) "Whether the civil and criminal matters involve the same subject; b) Whether the governmental entity that has initiated the criminal case

5

or investigation is also a party in the civil case; c) The posture of the criminal proceeding; d) The effect of granting or denying a stay on the public interest; e) The interest of the civil-case plaintiff in proceeding expeditiously, and the potential prejudice the plaintiff may suffer from a delay; and f) The burden that any particular aspect of the civil case may impose on defendants if a stay is denied." *Id.*

The instant civil litigation and the pending ISP criminal investigation involve the identical subject matter, namely the actions of Defendant Officers in connection with his encounter with Hadi Abuateleh. While the government is not a party in the instant civil litigation, the criminal investigation (which involves several governmental bodies) is still pending and ongoing, which weighs in favor of a stay. To be sure, the public has an interest in the prompt disposition of civil litigation, but that must be weighed against the public's interest in also ensuring that the criminal process can proceed untainted by civil litigation and with no threat to the Officer Defendants' constitutional rights. The potential prejudice to the Officer Defendants is significant when balanced against the potential prejudice to Plaintiff. This lawsuit was filed quickly after the incident. Plaintiff alleges substantial damages and is likely still seeking medical treatment. Any delay from a temporary stay does not any prejudice to Plaintiff.

Considering the balance of these factors, it is abundantly clear that this Court should grant the Officer Defendants' motion to stay the proceedings in this matter.

WHEREFORE, Officer Defendants, requests that this Court grant the instant motion and all of the relief requested, and all other reasonable relief, including, the entry of an order:

(1) staying the case; and

(2) staying, specifically, any obligation to respond to the Complaint and any pleadings.

(3) staying, specifically, the issuance of any discovery or any obligation to respond to any discovery.

6

By: _s/Michael J. Victor_

Attorney for Defendant Officer Patrick O'Donnell
Michael Victor
Donahue & Rose, PC
9501 W. Devon Ave., Ste. 702
Rosemont, IL 60018
312-541-1078
mvictor@drlawpc.com

By: _s/_K. Austin Zimmer

Attorney for Defendant Officers Brandon Collins and M. Hollingsworth
Del Galdo Law Group LLC
1441 S Harlem
Berwyn, Illinois
847 222-7000
zimmer@dlglawgroup.com

**CERTIFICATE OF SERVICE**

I hereby certify that on November 4, 2022, I electronically filed the foregoing document with

the Clerk of the Court using the CM/ECF system which will send notification of said filing to all

parties of record.

By: *s/Michael J. Victor*

Attorney for Officer Patrick O'Donnell
Michael Victor
Donahue & Rose, PC
9501 W. Devon Ave., Ste. 702
Rosemont, IL 60018
312-541-1078
mvictor@drlawpc.com