**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| DENA NATOUR FOR MINOR | ) | |
| HADI ABUATELAH, | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 22-cv-03998 |
| | ) | |
| v. | ) | Hon. Steven C. Seeger |
| | ) | |
| CHIEF OF POLICE OAK LAWN POLICE | ) | |
| DANIEL VITTORIO, OFFICER B. | ) | |
| COLLINS, OFFICER P. O'DONNELL, | ) | |
| OFFICER M. HOLLINGSWORTH and | ) | |
| THE VILLAGE OF OAK LAWN | ) | |
| Defendants. | ) | |
| | ) | |

**DEFENDANTS' MOTION TO STAY ALL DISCOVERY AS TO ALL
PARTIES AND SUPPORTING MEMORANDUM**

NOW COMES Defendants, Village of Oak Lawn and Chief of Oak Lawn Police, Daniel Vittorio (collectively, "Village Defendants"), by and through their counsel, KLEIN, THORPE AND JENKINS, LTD., Defendant Officers Brandon Collins and M. Hollingsworth, by and through their counsel, the DEL GALDO LAW GROUP, LLC, and Defendant Officer Patrick O'Donnell, by and through his counsel, O'HALLORAN KOSOFF, GEITNER & COOK, LLC (collectively "Defendants"), and hereby move this Honorable Court for entry of an order Staying these Civil Proceedings indefinitely until the conclusion of the multiple criminal proceedings and for leave to withdraw its answer and to file a Motion to Dismiss. In support thereof, the Defendants state as follows:

**INTRODUCTION AND PROCEDURAL BACKGROUND**

On August 1, 2022, Plaintiff filed her Complaint, alleging claims of excessive force and failure to intervene (Count I), racially motivated conspiracy (Count II), a *Monell* policy claim

(Count III), as well as state law supplemental claims of intentional infliction of emotional distress (Count IV), battery (Count V) and state law respondeat superior (Count VI) and indemnification (Count VII). The lawsuit arises from a July 27, 2022, encounter between officers from the Village of Oak Lawn Police Department and Hadi Abuatelah, a minor. The individual defendants include the Chief of Police Daniel Vittorio (sued in his official capacity as Chief of Police), and three Oak Lawn officers, one, Officer O'Donnell, who was recently indicted for aggravated battery and official misconduct by the Cook County State's Attorney's Office ("CCSAO") related to the underlying action and factual allegations contained in the Complaint. ████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████

On November 4, 2022, the individual Defendant Officers filed a motion to stay the entirety of the proceeding, which was joined on the same date by the Village of Oak Lawn and Chief of Police Vittorio. The Defendants motion to stay the proceedings was specific to the fact that the three individual Defendant officers were at the time the subject of a pending criminal investigation that had been conducted by the Illinois State Police ("ISP"), which has now been provided to the Cook County State's Attorney's Office ("CCSAO") for a determination on whether criminal charges would be filed.

On December 12, 2012, this Honorable Court granted a stay in part and ordered the Village to file an answer, and that Plaintiff could serve and obtain written responses to discovery from the Village, and that the Village could serve and obtain written discovery responses from the Plaintiff. The Court stayed oral discovery. This Honorable Court held: "For now, the Court stays the obligation of the individual officers to respond to the complaint. The Court does not stay the

obligation of the Village of Oak Lawn to respond to the complaint. The Village of Oak Lawn, as a municipal entity, has no Fifth Amendment rights, so it can and should respond to the complaint. (True, the existence of the ongoing investigation may make it more difficult for the Village to obtain the requisite information from the officers, who may assert their Fifth Amendment rights. But if so, so be it. The Village can respond that it lacks information, if that's the situation. That response is permissible under the Federal Rules.) The Village must respond to the complaint by January 10, 2023. The Court largely stays discovery, but not entirely. Plaintiff can serve and obtain written discovery from the Village of Oak Lawn. Plaintiff can serve third-party subpoenas, too. Plaintiff cannot serve written discovery on the individual defendants in light of the possible assertion of the Fifth Amendment." (Dkt. 36). The Village thereafter filed an answer to the Complaint, basing its denials and admissions on the videos and documents which were produced as part of the Village's Rule 26 disclosures, and written discovery was propounded on the Village.

On March 14, 2023, a status hearing was held, and the Court was informed that criminal charges were filed against Defendant Patrick O'Donnell. The Court allowed all parties to file a motion about the stay ("either to lift, or preserve, or expand,") by March 24, 2023. On March 16, 2023, Plaintiff's counsel filed a motion to modify the stay, requesting to take the oral deposition of Myriah Deal, an eyewitness to the underlying incident. (Dkt. 50). Counsel for the Defendants, because of a substitution related to the Village of Oak Lawn Counsel, requested an additional 30 days to file a motion relative to staying the proceedings.

The Village and individual Defendants now take the affirmative position that this case must be stayed in its entirety for several reasons. First, pursuant to the *Younger* abstention doctrine, not only is the criminal prosecution on-going relative to Officer O'Donnell, ██████████

████████████████████████████████████████████████████████████████████████

3

██████████████████████████████████████████████████████

███████████████████████████████████████ Second, the CCSAO has

not provided any declination letter related to the other two officers, and thus the continued stay as

to their Fifth Amendment Rights, and those of Officer O'Donnell, who clearly has Fifth

Amendment implications given his criminal indictment, should be protected. Third, practically

speaking, the Village is unable to defend and affirmatively prosecute its case without the necessary

practical participation of the Defendant Officers, and the discovery propounded on the Village,

without the practical participation of the Defendant Officers, does not allow the Village to put forth

its best defense. Finally, Plaintiff's *Monell* claim, although barebones and with conclusory

allegations invoking the "code of silence" without a single example, is subject to a future and more

immediate motion for bifurcation and potentially other dispositive motions, including leave to file

a motion to dismiss. Importantly, a *Monell* claim cannot be proven without first a finding of an

underlying unconstitutional misconduct, which cannot be examined here given the current criminal

prosecutions, which could dynamically change the litigation and defenses. Defendants thus move

this Court for a complete stay on all discovery, including written discovery and depositions, and

for leave to withdraw its answer and file a motion to dismiss.

## ARGUMENT

### I.  This Case Should be Stayed Pursuant to the *Younger* Abstention Doctrine

Defendants seek a stay of the present case pursuant to the abstention doctrine announced

in *Younger v. Harris*, 401 U.S. 37 (1971), and its progeny. In *Younger*, the Supreme Court held

that federal courts must abstain from enjoining ongoing state criminal proceedings on principles

of equity and comity. The *Younger* abstention doctrine has been expanded to apply to federal

claims for money damages, where the federal claims are potentially subject to adjudication in the

state criminal proceedings and could interfere with the state criminal proceeding. *See Simpson v. Rowan*, 73 F.3d 134, 137-39 (7th Cir. 1995). A federal damages suit could beat the state action to judgment and either undermine or preclude the state's consideration of some issues. *See Majors v. Engelbrecht*, 149 F.3d 709, 714 (7th Cir. 1998). Accordingly, federal courts should not entertain claims seeking monetary damages under § 1983 that call on the court to rule on issues still in dispute in the state court criminal proceedings. *See Batchelor v. Vill. of Evergreen Park*, No. 03 C 5337, 2004 WL 2057262, *4 (N.D. Ill. Aug. 6, 2004). Simply put, as stated in G*akuba v. O'Brien*, 711 F.3d 751, 753 (7th Cir. 2013), under *Younger*, 401 U.S. at 53, "federal courts must abstain from taking jurisdiction over federal constitutional claims that may interfere with ongoing state proceedings." The test is whether the federal court is taking jurisdiction over a claim in which elements or allegations thereof are being litigated in state court proceedings.

*Younger* abstention applies here because adjudication of Plaintiffs' federal claims would necessarily involve adjudication of many of the same issues in dispute in his state criminal proceedings, including many of the claims and potential defenses. *See Id.*; *Fuery v. City of Chicago*, No. 07 C 5428, 2008 WL 4874055, *3 (N.D. Ill. June 18, 2008) (*citing Simpson*, 73 F.3d at 135). *See, also, Gakuba v. O'Brien*, 711 F.3d 751, 751 (7th Cir. 2013) (federal claims arising from illegal searches, seizures and detentions involve constitutional issues that a criminal defendant has the ability to litigate during the course of the state criminal case); *see, also, Blanchard v. Weis*, 09 C 1749, 2013 WL 3287115, *1-2 (N.D. Ill. June 24, 2013) (granting defendants' motion to stay while plaintiff's criminal case was pending on direct appeal before the state appellate court).

███████████████████████████████████████████████

███████████████████████████████████████ Plaintiff claims that the officer

attempted to search Plaintiff illegally. (Sec. Amended. Compl. Para #13). Plaintiff alleges that after Plaintiff pled on foot, that the officers tackled him and pinned him to the ground, and that although he was made immobile, Officer Collins punched and beat him (*Id*. at #15-17). Plaintiff alleged the actions of the Defendant Officers were excessive, and that that he was unreasonably searched and seized. (*Id*. at #26). With respect to Count II, in which he alleges racially motivated conspiracy to deprive Plaintiff of his Constitutional rights, Plaintiff alleges that he was conspired against because he is Arab American and that the "…officers knowing that the above conspiracy to illegally harm, charge and abuse Plaintiff was about to be committed, and having the power to prevent or aid in preventing the commission of the acts in furtherance of said conspiracy, neglected and/or refused to do so…." (*Id*. at #27-28). In pleading Plaintiff's state law supplemental claims, Plaintiff alleged that pursuant to the Intentional Infliction of Emotional Distress claim ("IIED"), that the Defendant Officers engaged in extreme and outrageous conduct by beating and tasing Plaintiff, failing to prevent or stop the abuse, and "…by constructing a false version of events to cover up their conduct." (*Id*. at 26). And with respect to state law battery, Plaintiff alleged that Defendant officers "were not in imminent danger at the time of the brutal beating and thus have no legal justification for the continued harm to Plaintiff." (*Id*. at 26-27).

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

## II. This Case Should be Stayed Because of the Pending Criminal Investigation and Prosecution of the Officer Defendants

The Defendants collectively moved to stay the pendency of the civil matter because of the then on-going criminal investigation of the three named officers. [REDACTED]

[REDACTED] This Court rightfully held on December 12, 2022, that the Defendant Officers had legitimate Fifth Amendment interests that were clearly at stake in forcing them to answer the Complaint or discovery. The Court, however, found that the Village had no such Fifth Amendment right and allowed limited discovery, and

forced the Village to answer the Complaint.  Finally, the Court reasoned that its ruling served the "interest of moving the case forward without interfering with legitimate interests in an ongoing criminal proceeding."  *(Dkt. 36)*. Federal Rule of Civil Procedure 26(c) gives the Court discretion to issue an order staying discovery for good cause. Additionally, "the court has the inherent power to stay civil proceedings, postpone civil discovery, or impose protective orders when the interests of justice so dictate." *Doe v. City of Chicago*, 360 F.Supp.2d 880, 881 (N.D. Ill. 2005).

Currently, Officer Patrick O'Donnell has been indicted by the CCSAO for aggravated battery and official misconduct.  This is a significant development that will effect the civil litigation because the Officer has a Fifth Amendment interest at stake, and because the Village cannot practically and purposefully participate in underlying discovery without the participation of the officer.  Although the Village has no Fifth Amendment rights, it likewise has no independent knowledge except from its agents, three police officers.  That practical involvement is even less likely now because of both the criminal prosecution of Officer O'Donnell, and the far less publicized fact that no declination letter currently exists as to Officers Collins and Hollingsworth from the CCSAO.  It is unclear to these Defendants whether the CCSAO is conducting a continued investigation into the other two officers, if a Grand Jury has been summoned, or if the other two officers will be indicted. Thus, the Officer Defendants could continue to be forced into the unfair and prejudicial position of potentially invoking their Fifth Amendment Rights, which could impact both the civil litigation and criminal investigation and prosecution, and there is no way of knowing at this point whether that will remain throughout the criminal proceedings of at least Officer O'Donnell.  *See Cruz v. Cty. of DuPage*, No. 96 C 7170, 1997 WL 370194, at *1 (N.D. Ill. June 27, 1997) ("whether the court should exercise its discretion in order to avoid placing the defendants in the position of having to choose between risking a loss in their civil cases by invoking their

Fifth Amendment rights, or risking conviction in their criminal cases by waiving their Fifth Amendment rights and testifying in the civil proceedings.").[1]  This puts the Village in the unfavorable position of lacking the best and most accurate evidence related to the underlying claims, the testimony of the three officers.  Courts have recognized that where a stay has been granted to individual defendants, a defendant municipality would be in an unfair position if it, likewise, did not receive a stay because the testimony of the individual officers regarding the underlying incident would be unavailable, and thus the municipality's defense would be limited. *See Chagolla v. City of Chicago*, 529 F. Supp. 2d 945, 948 (N.D. Ill. 2008). The claims and parties are inextricably tied and the participation of all is required for a proper defense.

Courts consider certain relevant factors in deciding whether a stay is appropriate. *See Chagolla*, 529 F.Supp.2d, at 948. The factors considered include the following: a) "Whether the civil and criminal matters involve the same subject; b) Whether the governmental entity that has initiated the criminal case or investigation is also a party in the civil case; c) The posture of the criminal proceeding; d) The effect of granting or denying a stay on the public interest; e) The interest of the civil-case plaintiff in proceeding expeditiously, and the potential prejudice the plaintiff may suffer from a delay; and f) The burden that any particular aspect of the civil case may impose on defendants if a stay is denied." *Id.*   The Court is essentially balancing the interests of the plaintiff, the defendants and the public in determining whether to grant a stay during the pendency of a parallel criminal prosecution.  *Id.*

---

[1] The Officer Defendants initial motion, Dkt. 29, pp. 3-6, provides a complete review and analysis related to the Fifth Amendment Rights of the Defendant Officers that need not be repeated here.  The Court did in fact "…appropriately champion the principles underlying the Fifth Amendment by staying the case and preventing Officer Defendants from being prejudicially compelled to make decisions which would compromise their rights and their civil defense." (Dkt. 29, p. 4).

[REDACTED]

Plaintiff has since served written discovery requests upon the Village of Oak Lawn. There can be no doubt that the written discovery requests implicate and impact the Officer Defendants and the Village, because the Village will be unable to speak to the officers to obtain the most truthful and clear answers. The answers and responses, which request information about this and other arrests and complaints are inextricably linked in part to the vicarious knowledge of the Officer Defendants and could be used as evidence in the criminal proceedings and could impact the officer's rights. Simply asking for something as innocuous as identifying the discoverable information an individual may possess, forces the Village and Chief Vittorio to identify only subject matter from the individual Officer Defendants, instead of specific identifiable reasons for

their use and methods of force, reason for stop and charging, etc. For these reasons, this case should be stayed pending the resolution of the criminal prosecutions and investigations.

**III.     This Case Should be Stayed with Respect to Discovery Because Plaintiff's *Monell* Claim Should be Subject to Dismissal, and if it Survives, It Should be Subject to Bifurcation**

On December 29, 2022, Defendants Village of Oak Lawn and Chief Vittorio answered the Complaint (Dkt. 36). From that point, the Defendants propounded their Rule 26 Disclosures, along with documents and media related to the underlying incident. No other significant development has yet occurred in this case, given the Court's stay identified above. Upon review of the Complaint by new counsel, appointed and then substituted by this Court on March 27, 2023, Defendants Village of Oak Lawn and Chief Vittorio plan to move this Court for an order allowing them to withdraw their Answer and Affirmative Defenses and to file a Motion to Dismiss the *Monell* claim. Such a motion, given a complete lack of prejudice to the Plaintiff, can and should be granted by leave of this Court. *See Montalvo v. Adreani*, No. 10 C 7044, 2011 WL 3704795, fn *2 (N.D. Ill. August 9, 2011) (Judge Gettleman granted defendants motion to withdraw their answers and join the instant motion to dismiss). Here, leave should be granted because no *Monell* discovery has not substantially commenced, and no party would be prejudiced.

Plaintiffs' *Monell* claim is alleged in Count III of their Complaint. They cannot prevail on a *Monell* claim without first establishing an underlying constitutional violation. *See Swanigan v. City of Chicago*, 775 F.3d 953, 962 (7th Cir. 2015); citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) ("If the plaintiff fails to prove a violation of his constitutional rights in his claim against the individual defendants, there will be no viable *Monell* claim based on the same allegations."). Because of the inability for the Village to defend itself properly, because of the absence of testimony from the three officers given the criminal investigation and prosecution, the

13

Village cannot practically and purposefully participate in the underlying discovery, necessitating a stay, and therefore any *Monell* claim cannot be established because no underlying constitutional violation could be established. As such if the Court does not dismiss the claim, it should be stayed because it cannot move forward with moving the underlying case forward.

As a way of preview to the Defendants' future Motion to Dismiss, the allegations are barebone, boilerplate, and some not relevant to the Village of Oak Lawn, including that agencies such as OPS, IAD and IPRA had interrelated *de facto* policies and practices, when those agencies are that of the City of Chicago, not the Village of Oak Lawn, which literally serves to express the significant boilerplate nature of this very claim. (Compl. Para #26). Plaintiff allegations are a really a focus on this underlying case, and not that of a practice, custom or policy, outside of merely alleging in conclusory fashion that "the actions of Defendants were committed pursuant to one or more interrelated de facto policies, practices and/or customs of the Village of Oak Lawn, and police department." (*Id*. at #26). There is not a single instance beyond the underlying events giving rise to this lawsuit which are discussed or even alluded to, instead stating the "department's total failure to investigate the unconstitutional conduct of the Defendant Officers ***or other Oak Lawn Police Officers***, or to discipline them, in this ***and/or other cases***, for their unconstitutional conduct." (*Id*. at 30) (emphasis added). "Boilerplate allegations of municipal policy, entirely lacking in any factual support that a city policy does exist, are insufficient." *Rodgers v. Lincoln Towing Service, Inc.*, 771 F. 2d 202 (7th Cir. 1985); *citing Strauss v. City of Chicago*, 760 F. 2d 765, 767-768 (7th Cir. 1985).

In alleging a *Monell* claim, Plaintiff points only to his own personal experiences by merely stating that "the Defendants" violated his Constitutional rights. This *Monell* allegation provides absolutely no other evidence but instead conclusive, quoted citations lifted directly from

*Monell* and its progeny. *See Ellis v. City of Chicago*, 2010 WL 310777 *4-5, fn. 2 (N.D. Ill. 2010) (holding that a plaintiff's personal experiences cannot alone establish a municipal liability claim); *see, generally, City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823-824 (1985) (holding that a single incident is insufficient to impose liability under *Monell* unless it was caused by an existing, unconstitutional municipal policy which is attributed to a final policymaker). Plaintiff does not allege any pattern of conduct that may give rise to a plausible claim that an unconstitutional custom or practice exists. *See Calhoun v. Ramsey*, 408 F.3d 375, 380 (7th Cir. 2005). Plaintiff merely restates the law strung together with conclusory statements and thus the claim should be dismissed with prejudice. Plaintiffs themselves have identified the lack of significance related to the *Monell* claim, indicating in their Motion to Stay discussion on the necessity to take the deposition of Myriah Deal, that "Myriah Deal is the Plaintiff's whole case." (Dkt. 50, p. 2). But a single incident is insufficient to plead *Monell* liability, much less prove it.

Finally, if this Court believes that Plaintiff has plead a plausible *Monell* claim after a Motion to Dismiss, Defendants request that this Court bifurcate Plaintiff's *Monell* claim. Again as a preview thereto any future motion, bifurcation and stay of Plaintiffs' *Monell* claim best serves the Rule 42 interests of convenience, economy, expedition, and avoidance of undue prejudice; it also represents a sound exercise of the Court's inherent power to control its docket. *Krocka v. City of Chicago*, 203 F.3d 507, 516 (7th Cir. 2000). Bifurcation and a stay of the *Monell* claim is a sensible decision favorable to all parties. For those reasons, this case should be stayed in its entirety.

**WHEREFORE,** for all of the above-stated reasons, the Defendants respectfully request that this Honorable Court enter an order staying the civil proceedings in their entirety.

Respectfully submitted,

By: */s/Anthony Becknek*_____

Allen Wall (jawall@ktjlaw.com)
Howard C. Jablecki (hcjablecki@ktjlaw.com)
Anthony G. Becknek (agbecknek@ktjlaw.com)
Colleen M. Shannon (cmshannon@ktjlaw.com)
Klein, Thorpe and Jenkins, Ltd.
Attorneys for Defendants Daniel Vittorio and the Village of Oak Lawn
20 North Wacker Drive, Suite 1660
Chicago, Illinois 60606
(312) 984-6400

By: *s/Michael J. Victor*_____

Michael J. Victor
Attorney for Defendant Officer Patrick O'Donnell
IFMK Law, Ltd.
650 Dundee Road, Suite 475
Northbrook, IL 60062
Phone: (847) 291-0200
Email: mvictor@ifmklaw.com

By: *s/*K. Austin Zimmer

K. Austin Zimmer zimmer@dlglawgroup.com
Michael Aaron Albert (albert@dlglgroup.com)
Sean Michael Sullivan (sullivanb@dlglgroup.com)
Attorneys for Defendant Officers Brandon Collins and M. Hollingsworth
Del Galdo Law Group LLC
1441 S Harlem
Berwyn, Illinois
(847) 222-7000